# UNITED STATES DISTRICT COURT
### for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Kareem Sycere Warren | )<br>)<br>)<br>)<br>)<br>) |

Case No. 1:25MJ **63**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____ Middle _____ District of _____ North Carolina _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(1) | Possession of a Firearm by a Convicted Felon |
| 18 U.S.C. 922(o) | Possession of a Machinegun |

The application is based on these facts:
See Attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*/s/ Trevor Mayes*
*Applicant's signature*

Trevor Mayes, Special Agent, ATF
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: **2/28/2025**

_____
*Judge's signature*

City and state: Winston-Salem, North Carolina

Joi Elizabeth Peake, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| IN THE MATTER OF THE SEARCH OF: Kareem Sycere Warren | Case No. 1:25MJ _63_ |
|---|---|

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT TO SEARCH AND SEIZE

I, Special Agent Trevor Mayes, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     Currently, I am investigating Kareem Sycere WARREN for the illegal possession of a firearm by a convicted felon and possession of a machinegun. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the collection of a buccal Deoxyribonucleic Acid (DNA) swab from Kareem Sycere WARREN, date of birth March 21, 2002.

2.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since April of 2023. I am a graduate of the Federal Law Enforcement Training Center Uniformed Police Training Program, Criminal Investigator Training Program, as well as the ATF National Academy, where I received extensive training in the investigation of firearms, controlled substances, arson, and explosives offenses.

3.    Prior to my career with ATF, I was employed as a Police Officer with the Pentagon Force Protection Agency since 2020. Within that role, I enforced laws according to the Code of Federal Regulations and the Virginia State Code. While working for PFPA, I made arrests, collected and preserved evidence, conducted suspect and witness interviews, and more. I have a Bachelor of Science Degree in Homeland Security from East Coast Polytechnic Institute Virginia Beach, VA.

4.    During my career with ATF, I have conducted and participated in case investigations involving violations of the Gun Control Act and the National Firearms Act. Those violations include firearms possession by prohibited persons, straw purchasing, unlicensed dealing of firearms, trafficking of firearms, machinegun manufacturing, etc. In furtherance of these investigations, I have utilized multiple investigative techniques including but not limited to physical and electronic surveillance, controlled purchases of evidence, management of confidential informants, examination of electronic evidence, and the seizure of electronically stored communications.  I have experience and/or training on monitoring and gathering information received from pen register and/or trap and trace device, real time GPS and geo-location information, and historical call detail records.  I have participated in the execution of search warrants authorizing the seizure of evidence in criminal investigations.  Through this experience, I have been able to successfully gather criminal intelligence and utilize this information in furtherance of ongoing criminal investigations.

5.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit

is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(g)(1) [Possession of a Firearm by Felon] and Title 18 U.S.C. § 922(o) [Possession of a Machine Gun] have been committed by Kareem Sycere WARREN. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## FACTS IN SUPPORT OF PROBABLE CAUSE

7. On December 3, 2023, at approximately 6:30 p.m., Officer Romps, with the Greensboro Police Department (GPD), was dispatched to the area of Highland Avenue and Barringer Street in reference to a wanted subject. Officer Romps reviewed the Computer-Aided Dispatch (CAD) notes, which advised that WARREN was at the corner of the intersection armed with a gun, and that WARREN was "on the run" from Ahoskie, NC. According to CAD, the 911 caller, hereinafter Woman-1, also reported that WARREN was wearing a cream- or light-colored hoodie and had dreads. Before arriving on scene, Officer Romps used a law enforcement database to verify WARREN had outstanding Orders for Arrest (OFA). Officer Romps arrived at the intersection Highland Avenue and Barringer Street at approximately 6:41pm to begin looking for WARREN.

8. Officer Brantley, who also responded to help locate WARREN, told Officer Romps that she observed an individual walking on Gregory Street, towards Barringer Street, wearing all light-colored clothing. Officer Romps responded to said location and

saw WARREN walking on the road. Officer Romps parked her fully marked patrol vehicle, approached WARREN, and called out to him to ask if he was Kareem. WARREN, with his hands in his pockets in front of him, turned and saw Officer Romps, and replied, "No." When WARREN turned, Officer Romps saw that WARREN had dreads and resembled the DMV photo she saw. After being ordered to stop, WARREN fled on foot.

9.      While chasing WARREN, Officer Romps observed WARREN run to the right side of a residence, located at the 900 block of Barringer Street. Officer Romps heard a commotion behind the residence, but by the time she made it there, she lost sight of WARREN. Officer Romps observed a knocked over garbage can. She then heard footsteps on the fallen leaves in the backyard of the residence. Officer Romps then jumped the fence into the backyard when she heard Officer Brantley advise over the radio that she was chasing WARREN, who had rounded back to the front of the residence. WARREN ran across the street to the 1200 block of Gregory Street (approximately 100 feet), where WARREN was apprehended. It should be noted that the only time GPD officers lost sight of WARREN was when he ran behind the house on Barringer Street.

10.      While WARREN was being searched for the firearm, he stated that he had lost his cell phone. No firearm was found on WARREN's person and WARREN denied tossing a firearm. When asked why he ran, WARREN replied "I don't know y'all." According to the CAD notes, at 6:46 p.m., Woman-1 told the 911 dispatcher that WARREN said the police were following him. Officer Romps then asked WARREN if he had a gun on him and he replied, "No, I didn't." Officer Romps then asked WARREN if

he tossed a gun at the other house and he replied "No, of course not." When WARREN was being placed into the back of a patrol vehicle, he reiterated that he lost his cell phone.

11.     Shortly after, Officer Huynh arrived on scene and deployed Canine Max along WARREN's flight path at the house on Barringer. Canine Max is trained to only locate and alert on items that have a human odor on them. Canine Max alerted to a cell phone near two garbage cans on the right side of the house. It should be noted the cell phone still had power, which indicates that it hadn't been there for long. Also on the right side of the house is a chain-link fence that separates the front yard from the back yard. Shortly after, Canine Max alerted to a Polymer 80 firearm with no serial number and an extended magazine. The firearm was in the backyard, just on the other side of the fence, which is approximately 8 feet from the cell phone. The firearm was equipped with a Machine Gun Conversion Device (MCD), also known as a "switch." A MCD converts a semi-automatic firearm to a fully automatic firearm such that one pull of the trigger will expel multiple bullets. When the firearm was located, it appeared to be dry, although the surrounding leaves were wet from rain earlier in the day. Additionally, the firearm and cell phone were both found in WARREN's flight path.

12.     While GPD was still on scene, Corporal Walton spoke to the resident of the home on Barringer, Man-1. Man-1 stated that he heard a thud sound at the time WARREN was going behind his home. GPD Crime Scene Investigators (CSI) then arrived to process the Polymer 80 firearm for DNA and collect it for evidence. CSI observed Corporal Walton, wearing gloves, clear the firearm to render it safe. Using a cotton-tipped applicator and distilled water, CSI collected an unknown DNA sample from the surface of the

handgun grip, slide, and trigger. Using the same process, an unknown DNA sample was also collected from the magazine.

13. WARREN was transported to the Guilford County Detention Facility for his state charges. The cellular phone that was recovered from behind the house on Barringer was given to the detention facility staff to be booked with WARREN's property.

14. On December 15, 2023, the National NIBIN [National Integrated Ballistic Information Network] Correlation and Training Center (NNCTC) developed several leads based on a correlation review of the test fire from the Polymer 80 firearm (recovered from Warren's flight path behind the home on Barringer Street on December 3, 2023) and ballistic evidence between cartridge casings recovered from the following: Williamston Police Department (WPD) case 23-06-030 (Scene 1), GPD case 2023-1009-209 (Scene 2), and GPD case 2023-1118-138 (Scene 3).

15. Of particular note, Scene 2 occurred on October 9, 2023, just two months before the instant offense. The reports detailed a shooting in which an occupant of one vehicle and the driver of another vehicle exchanged gun fire. When the shooting occurred, a GPD officer was nearby in their patrol vehicle and they heard approximately 15 rapid shots that sounded as if they were being fired from a fully automatic weapon.

16. Scene 3 occurred on November 18, 2023 just a few weeks before the instant offense. According to the report, several GPD officers responded to apartment buildings in the 800 block of Rugby Street, Greensboro, NC, in reference to multiple residences and vehicles being struck by gunfire. An injured individual, Man-1, checked into Moses Cone hospital with a gunshot wound to the shoulder. Officers made contact with Man-1, who

indicated he was on Rugby Street, but refused to answer any questions. Prior to police arriving on scene, CAD notes advised several different 911 callers reported seeing a group of people running and shooting at each other. Responding officers assessed property damage, looked for spent cartridge casings, and conducted witness interviews. One witness, Witness-1, reported that she was walking between buildings when she observed two groups of black males discharging firearms at one another. Many mixed caliber and brand cartridge casings were recovered from the scene.

17. There was also a small, concentrated area where multiple discharged Aguila brand 9mm casings were located near a tree in front of a home in the 800 block of Rugby Street. A witness, Witness -2, stated that a thin black male, wearing a blue sweatshirt frantically knocked on her door (which is attached to the house on Rugby St. where the casings were located) before facing away and firing at an unknown target. The Aguila 9mm casings showed a correlation with the test fire from the Polymer 80 firearm that was recovered from Warren's flight path behind the residence located at the 900 block of Barringer Street on December 3, 2023.

18. On December 21, 2023, GPD Detective Clous seized WARREN's cell phone, with phone number ending in 5106, from the Guilford County Detention Facility, and provided a receipt for the seizure. On January 17, 2024, Detective Clous obtained a Search Warrant from a Guilford County Superior Court Judge for all AT&T records associated with the previously mentioned phone number. On January 24, 2024, Detective Clous received the records from AT&T. In particular, the records show WARREN's cell phone received a phone call at approximately 4:50pm from phone number ending in 9755

on the day of the shooting outlined above in paragraphs 15 and 16. The coordinates that the cell phone plotted to, as a result of that call, were 36.06112 latitude and -79.7749211 longitude. Detective Clous searched those coordinates in Google Maps, and determined that WARREN's phone was in an area near the intersection of Rugby Street and Decatur Street, which is approximately 500 feet from the residence on Rugby Street where the casings were located in Scene 3 described in paragraphs 15 and 16. The location data of WARREN's cell phone indicate that his phone was in the area of the shooting during the time it happened and, as stated above, the casings recovered from that shooting were determined to be fired from the Polymer80 recovered when Warren was arrested in December 2023. [Agent note: after talking to Detective Clous, I learned the subscriber of the phone number ending in 5106, was another individual who was incarcerated during the time of the shooting. As such, that individual could not have been at the scene of the shooting on November 18, 2023.]

19.     On June 27, 2024, Firearm and Toolmark Examiner Lendel-Hardin completed a Firearms Examination Report. The report determined the previously mentioned Polymer 80 firearm is capable of firing fully automatic.

20.     On October 24, 2024, I listened to some of WARREN's jail calls. On one jail call, placed on December 4, 2023, at 2:46 p.m., WARREN called Woman-1. WARREN inquired about his iPhone and his "bread," then told Woman-1 to take those items to "the room" and give it to an unknown third party. In the same call, WARREN expressed his anger with Woman-1 and accused her of getting him locked up. On the same day, at 2:49 p.m., WARREN called a phone number ending in 1061 and spoke to an unknown male.

WARREN told the unknown male that Woman-1 is bringing his iPhone to "the room." The phone recovered from behind the residence on Barringer Street during WARREN's December 3, 2023, arrest is an Android brand phone. As such, WARREN's statements on the jail calls indicate that he also has an iPhone that was not recovered by GPD. Based on my experience and conversations with colleagues, it is common for individuals involved in criminal activity to have two phones, one phone being their main phone and the other one being cheap and easy to dispose of (i.e. a burner phone). Based on my training and experience.

21.    On October 25, 2024, SA Elijah Carpenter and I conducted a custodial interview of WARREN while he was in custody at the High Point Detention Facility. WARREN was in custody for his state firearm and drug charges. I read WARREN his Miranda Rights, which he waived and agreed to answer questions. I asked WARREN about his Greensboro arrest on December 3, 2023. WARREN said he was coming from his girlfriend's house, and he didn't know that it was the police that was trying to stop him. WARREN then said he ran behind a house and ran into a trash can then hopped a fence before he was apprehended a short distance later. WARREN confirmed the police got his phone because he had it in his hand as he was running and dropped it. WARREN confirmed he knows who Woman-1 is (the 911 caller). I then inquired about WARREN's knowledge of "switches." WARREN stated that a switch makes a gun shoot from semi-automatic to fully automatic.

22.    I then asked WARREN about the November 18, 2023, shooting in Greensboro. WARREN denied any involvement and seemingly became agitated when I

brought up evidence. WARREN also talked about how he was shot in 2019, and as a result, he takes unprescribed pills, such as Percocet, to help with the pain.

23.     On October 28, 2024, I conducted a telephonic interview with Woman-1. Woman-1 said due to an upcoming funeral, she was unable to meet in person. I asked Woman-1 to talk about what led up to her calling 911 on WARREN on December 3, 2023. Woman-1 said she was giving WARREN a ride when her and WARREN began arguing. Woman-1 said she became angry when WARREN called her a bunch of bad names, so she told WARREN to get out of her car. Woman-1 said she then called 911 because she knew WARREN had warrants. Lastly, Woman-1 said before WARREN got out of her car, she saw that WARREN had a pistol in his lap.

24.     Through my training, experience, and consultation with forensic experts, I know that DNA is a molecular material found in virtually all cells of the body. DNA from a person's blood is the same as DNA from the person's sweat, saliva, and body tissue. It is possible to obtain a sample of a person's DNA from clothing they wore, objects they handled, or from traces of sweat, blood, semen, or body tissue left at a crime scene. A forensic DNA examiner can examine such DNA samples and obtain multiple genetic markers, which comprise a genetic profile. An examiner can compare a genetic profile developed from a crime scene sample with a reference sample from a known individual. With this comparison, an examiner can conclude, with reasonable scientific certainty, whether the DNA from a crime scene sample matches that of a known individual. Reference samples are commonly collected by a buccal swab, a method by which a sterile swab is used to collect the cell samples from the inside of an individual's cheek.

25. Based on the facts set forth above, a DNA sample from WARREN is needed to provide evidence of his possession of the Polymer 80 firearm equipped with an MCD. The Polymer 80 was recovered on December 3, 2023, from the back yard of a residence, which is located at the 900 block of Barringer Street. Before the firearm was collected for evidence, CSI swabbed it for unknown DNA samples. The DNA sample obtained from WARREN will be used as a comparison against the DNA swabs which were collected from the Polymer 80 firearm.

26. While it is possible to obtain a usable sample of saliva when an individual expectorates, biological forensic analysts prefer the controlled sample of an individual's saliva by way of a buccal swab inserted briefly just inside the mouth and cheek area. This process takes just a few seconds per side of the mouth, and carries no risk of physical pain, injury, or embarrassment to the individual. In the event WARREN is not willing to have a buccal saliva sample collected, I submit that qualified medical personnel may be called upon to assist in the collection of a blood sample from WARREN. I submit that a reasonable amount of force by law enforcement personnel, or their designees, and/or correctional staff may be used to obtain these samples.

27. Based upon my training and experience, the training and experience of other law enforcement officers with whom I have conducted investigations or had discussions, and the aforementioned factual information, I respectfully submit that there is probable cause to conclude that a buccal DNA swab saliva specimen obtained from inside the mouth and cheek area of WARREN or a blood sample from WARREN would provide evidence of his involvement in the possession of the firearm, in violation of 18 U.S.C. §

922(g)(1) [Possession of a Firearm by Felon] and Title 18 U.S.C. § 922(o) [Possession of a Machine Gun].

## **CONCLUSION**

28.     Based on the preceding information, I respectfully submit that this affidavit supports probable cause for a warrant to collect a buccal "DNA" swab saliva specimen (or a blood sample) from WARREN.

Respectfully Submitted,

/s/ Trevor Mayes
Trevor Mayes
Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives (ATF)

Dated: February 28, 2025

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

Honorable Joi Elizabeth Peake
United States Magistrate Judge
Middle District of North Carolina

## ATTACHMENT A

### Person To Be Searched

This warrant applies to Kareem Sycere WARREN, a black male with black hair and brown eyes, approximately 5'11" tall, approximately 200 pounds, with a date of birth of March 21, 2002 and FBI: 2EDDV606K, SID: NC2258738A, SSN: XXX-XX-8223 to submit to collection of oral (buccal) sample by swabbing for DNA analysis or in the alternative a blood draw. WARREN's photograph, follows:

*Figure 1 - WARREN 05/08/2024*



*Figure 2 - WARREN 12/03/2023*



## ATTACHMENT B

### Particular Things To Be Seized

Pursuant to an investigation of Kareem Sycere WARREN for a violation of 18 U.S.C. § 922(g)(1) [Possession of a Firearm by Felon] and Title 18 U.S.C. § 922(o) [Possession of a Machine Gun], this Warrant authorizes the officers to whom it is directed to collect the following from the subject identified in Attachment A:

1. Deoxyribonucleic Acid (DNA) by means of oral (buccal) swabs collected from Kareem Sycere Warren.

2. Or in the alternative if a buccal swab cannot be obtained, a blood sample from Kareem Sycere Warren.